USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MEYER ROSENBAUM,

         Plaintiff,

    -against-

DATACOM SYSTEMS, INC.,

         Defendant.
-------------------------------------------------------------x

          13 Civ. 5484 (PKC)

         MEMORANDUM
         AND ORDER

CASTEL, U.S.D.J.

     Plaintiff Meyer Rosenbaum, a resident of Tel Aviv, Israel, brought an action in

the Supreme Court of New York County to recover compensatory damages against DataCom

Systems, Incorporated ("DataCom") based on a $200,000 promissory note issued to him in July

2005 with a maturity date of July 2007 (the "Note").  Rosenbaum alleges that DataCom

defaulted on the Note by failing to pay principal and accrued interest when due, and seeks to

recover these amounts together with costs and attorneys' fees incurred in connection with his

attempt to enforce the Note.  DataCom, an Arkansas-based corporation, removed the case to this

Court based on the parties' diversity of citizenship.  Rosenbaum moves for summary judgment

on his claim pursuant to Rule 56, Fed. R. Civ. P.  DataCom cross-moves to dismiss the action for

lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P.  For the following

reasons, defendant's motion to dismiss is denied and plaintiff's motion for summary judgment is

granted.

I.   PERSONAL JURISDICTION

A.  Jurisdictional Facts

Plaintiff Meyer Rosenbaum resides in Tel Aviv, Israel, and DataCom states on information and belief that he is a citizen of Israel.  (Notice of Removal ¶ 5, Dkt. No. 1) Defendant DataCom is the corporate successor to a Delaware corporation also named DataCom Systems, Inc. ("DSI"); DSI was the issuer of the promissory note in dispute here.  (Bailey Decl. ¶ 2, Dkt. No. 18)  In 2007, DataCom was incorporated in Nevada, and DSI merged into DataCom at that time.  Id.   DataCom's principal place of business is Arkansas.  Id.[1]

In March 2005, DSI retained a consulting company, Crystal Finance, Inc. ("CFI") to solicit the participation of qualified investors in a securities offering.  (Def. Response to Rule 56.1 Statement, Response 1, Dkt. No. 20)  In connection with DSI's securities offering, CFI provided at least three documents to prospective investors: a convertible promissory note, a subscription agreement, and an executive summary of DSI's business.  (Id., Response 5)  The Note that is the subject of this action was one of several convertible promissory notes issued under individual subscription agreements in connection with DSI's securities offering.  (Id., Response 6)  Rosenbaum's subscription agreement is specifically referenced in the Note.  (Id., Response 7; Bailey Aff. Ex. 1)  Rosenbaum avers that he participated in the Note offering in reliance on the executive summary, subscription agreement, and Note.  (Rosenbaum Aff. ¶ 3, Dkt. No. 11)

In connection with the issuance of the Note, Rosenbaum signed the subscription agreement and transmitted $200,000 to the escrow account specified in that agreement.  (Def.

---

[1] Subject matter jurisdiction in this action is premised upon complete diversity of citizenship.  28 U.S.C. § 1332(a)(1).  Rosenbaum is a citizen of a foreign country, while DataCom is a citizen of Nevada, its state of incorporation, and Arkansas, its principal place of business.  28 U.S.C. § 1332(c)(1).

Response to Rule 56.1 Statement, Response 8)  The subscription agreement names David Appel as escrow agent; Appel is an attorney whose law offices were located in New York at the time the Note was issued.  (Bailey Aff. Ex. 2 at 1; Gallic Aff. ¶ 2)  Paragraph 12 of the subscription agreement further provides that the agreement "shall be governed by and construed in accordance with the laws of the State of New York and the undersigned hereby consents to the jurisdiction of the courts of . . . the Southern District of New York United States District Court." (Bailey Aff. Ex. 2 at 11)  The undersigned in this context include Meyer Rosenbaum and Jack Bailey, who signed the agreement on behalf of DataCom.  Id. at 13.

### B.  Legal Standard

When served with a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.  Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994)).  A plaintiff carries this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction."  Id. (citations omitted)  A plaintiff can make such a showing through affidavits and other supporting materials "containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant."  Id. (citations and quotations omitted).  "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  Id. (quoting A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993)).

"As a general rule, the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court

sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999) (citation and quotations omitted).

Under New York law, "parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract." <u>Brooke Group Ltd. v. JCH Syndicate 488</u>, 87 N.Y.2d 530, 534 (1996); <u>see also</u> <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum selection clauses in contractual agreements."). Forum selection clauses "are prima facie valid" and "are enforced because they provide certainty and predictability in the resolution of disputes." <u>Sterling Nat. Bank as Assignee of Norvergence, Inc. v. Eastern Shipping Worldwide, Inc.</u>, 826 N.Y.S. 2d 235, 237 (1st Dep't 2006) (citations omitted). Such clauses "are not to be set aside unless a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court." <u>Id.</u> (citations and quotations omitted). Forum selection clauses may be either mandatory, designating an exclusive forum, or permissive. <u>See</u> <u>John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc.</u>, 22 F.3d 51, 52-53 (2d Cir. 1994).

C. <u>Discussion</u>

Rosenbaum relies upon the terms of the subscription agreement pursuant to which the Note was issued. The terms of the subscription agreement govern the Note, which, by its

own terms, was issued "pursuant to Confidential Offering Materials issued by the Company."
(Bailey Aff., Ex. 1, at 1)  The "Offering Materials consist[] of a Subscription Agreement,
Investor Questionnaire, and exhibits thereto . . . ." Id.  Further, defined terms not otherwise
defined in the Note "shall have the meanings set forth in the Offering Materials."  Id.

There is no dispute that the subscription agreement governs the Note.  DataCom
admits that Rosenbaum signed a subscription agreement and transmitted $200,000 to the account
specified in that agreement.  (Id., Response 8 ("Plaintiff apparently signed a subscription
agreement and transmitted a total of $200,000 to the escrow account that was specified in that
agreement"))  DataCom further admits that the Note was issued under an individual subscription
agreement.  (Def. Response to Rule 56.1 Statement, Response 6 ("the [Note] that is the subject of
this action was one of several convertible promissory notes that were issued by DSI . . . after
each investor executed his or her own subscription agreement."))  DataCom does not argue, and
has submitted no evidence to show, that the subscription agreement does not control the Note.
To the contrary, both parties have submitted nearly identical versions of the subscription
agreement and the Note as exhibits.  (Bailey Aff., Ex. 1 and 2; Rosenbaum Aff., Ex. B and C).
The text of these documents is identical; the only difference among the documents is on the
signature page of the subscriber agreements.  Rosenbaum's version is signed only by Jack Bailey
and dated March 10, 2005, while DataCom's version is signed by both Rosenbaum and Bailey
and dated July 26, 2005.  (Bailey Aff., Ex. 2 at 13; Rosenbaum Aff, Ex. C at 13)

Paragraph 12 of the subscription agreement provides as follows: "This
Subscription Agreement shall be governed by and construed in accordance with the laws of the
State of New York and the undersigned hereby consents to the jurisdiction of the courts of the
State of New York and/or the Southern District of New York United States District Court."

(Bailey Aff. Ex. 2 ¶ 12)  There is no dispute that this agreement was executed on July 26, 2005 by both Rosenbaum and Jack Bailey, CEO of DataCom, on behalf of DataCom.  (Id. at 13; Def. Response to Rule 56.1 Statement ¶ 11; Bailey Aff. Ex. 1 at 12-13)  DataCom argues that "the undersigned" refers only to the investor who signs the Note, and not to DataCom.  (Def. Response to Rule 56.1 Statement ¶ 10)  "The undersigned" is not a defined term in the Subscription Agreement.  The word "undersigned" means "a person whose name is signed at the end of a document."  Black's Law Dictionary, 9th Ed. (2009)

DataCom argues that, elsewhere in the Subscription Agreement, "the undersigned" is used in reference to the subscriber.  The first sentence of the agreement provides that "[t]he undersigned hereby subscribes for the $200,000 principal amount of Convertible Promissory Notes . . . ."  (Bailey Aff, Ex. 2, at 1)  The following paragraph provides that "[t]he undersigned agrees to pay an aggregate [sic] of $$200,000 [sic] as a subscription for the Notes being purchased hereunder."  Id.  Later in the agreement, "the undersigned" is used in each of a series of representations and warranties.  Id. at 5-9.  While some of these representations and warranties appear to pertain only to the subscriber, others appear to be bilateral representations made by both the subscriber and DataCom.  Id. (see, e.g., ¶ 1(e) ("The undersigned understands that no federal or state agency has made any finding or determination regarding the fairness of this offering . . . .").  Elsewhere in the subscription agreement, the subscriber is referred to as the "Holder," which is a defined term in the Note referring to "Meyer Rosenbaum or permitted assigns."  (Bailey Aff., Ex. 1 at 1)  The agreement also refers to Rosenbaum as "the undersigned subscriber."  (Bailey Aff., Ex. 2 at 9)

While certain references to "the undersigned" do appear to refer solely to the subscriber, other references do not so appear; it is only by reference to the context surrounding

the phrase that the meaning of any specific reference is made clear.  Read as a whole, the language of the agreement does not suggest that DataCom—one of the undersigned—should not be bound by its agreement to its own choice of law and jurisdictional provision.  This conclusion is bolstered by the fact that a defined term ("Holder") and a more specific phrase ("the undersigned subscriber") are used elsewhere in the agreement to refer specifically to Rosenbaum.  The signature block following the body of the agreement contains a space for the signature, name, address, and social security number of the subscriber; beneath that space the page reads "Accepted this 26 [sic] day of July, 2005, on behalf of DataCom Systems Inc.", and below that line is the signature of "Jack Bailey, CEO."  (Bailey Aff. Ex. 2 at 13)  Giving the word undersigned its plain meaning and in the absence of evidence of a contrary intent, DataCom has consented to jurisdiction in this Court.

Because Rosenbaum has produced uncontroverted evidence of a valid, enforceable forum selection clause providing jurisdiction in this Court, further analysis under New York's long-arm statute is not required.  See, e.g., AEP-PRI Inc. v. Galtronics Corp. Ltd., 12 Civ. 8981 (PAE), 2013 WL 4400833 (S.D.N.Y. Aug. 13, 2013) (if jurisdiction is provided by the forum selection clause, "the analysis ends there."); Exp.-Imp. Bank of the U.S. v. Hi–Films S.A. de C. V., 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) ("Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.").  Further, a clause in which parties consent to a given jurisdiction "satisfies constitutional requirements of due process, and will be enforced unless it would be unreasonable or unjust to do so."  ICC Indus., Inc. v. Israel Disc. Bank, Ltd., 04 Civ. 6945 (DC), 2005 WL 1844616 (S.D.N.Y. July 29, 2005) aff'd, 170 F. App'x 766 (2d Cir. 2006) (citing Nat'l

- 7 -

Union Fire Ins. Co. of Pittsburgh v. Frasch, 751 F.Supp. 1075, 1078 (S.D.N.Y.1990) (referring to a permissive forum selection provision)); see also Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964).

Thus, in this case the Court has personal jurisdiction over DataCom in New York, and DataCom's motion to dismiss for lack of personal jurisdiction under rule 12(b)(2) is accordingly denied.  The Court now turns to Rosenbaum's motion for summary judgment.

## II.   SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphases in original).  A dispute about a fact is material if it "might affect the outcome of the suit under the governing law."  Id. at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

"[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists."  Gallo v. Prudential Residential Services, Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  In response, the nonmovant bears only a "limited burden of production," Powell v. Nat'l Bd. of Medical Examiners, 364 F.3d 79, 84 (2d Cir. 2004), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom

summary judgment is sought," Gallo, 22 F.3d at 1223.  Nevertheless, the nonmovant "may not

rest upon the mere allegations or denials of his pleading, but must set forth specific facts

showing that there is a genuine issue for trial." Liberty Lobby, Inc., 477 U.S. at 248 (quoting

First Nat'l Bank of Ariz. v. Cities Svc. Co., 391 U.S. 253, 288 (1968)).  Those specific facts must

be supported by "citing to particular parts of materials in the record," Rule 56(c)(1)(A), Fed. R.

Civ. P, and any affidavits relied upon "must be made on personal knowledge" and "set out facts

that would be admissible in evidence," Rule 56(c) (4), Fed.R.Civ.P.  "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby,

Inc., 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

Local Civil Rule 56.1 of this District requires a summary judgment movant to

submit a statement with numbered paragraphs setting forth "the material facts as to which the

moving party contends there is no genuine issue to be tried."  Local Civil Rule 56.1(a).  "Each

numbered paragraph in the statement of material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted for purposes of the motion unless

specifically controverted by a correspondingly numbered paragraph in the statement required to

be served by the opposing party."  Local Civil Rule 56.1(c).  "Each statement by the movant or

opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement

of material fact, must be followed by citation to evidence which would be admissible, set forth as

required by Fed.R.Civ.P. 56(c)."  Local Civil Rule 56.1(d).


B.  Relevant Facts

DataCom admits the following facts: (1) that it issued the Note in connection with

its securities offering, see Def. Response to Rule 56.1 Statement, Response 6; (2) that under the

Note it agreed to pay Rosenbaum the sum of $200,000 plus interest at the rate of 8% per annum no later than July 2007, see id., Response 12;  (3) that under the terms of the Note, a failure to pay interest or principal when due constitutes an event of default if such failure is not cured within ten days, see id., Response 13; (4) that $125,000 plus appropriate interest is due under the Note, see id., Response 15.  While DataCom also admits that Rosenbaum deposited $200,000 into the escrow account designated in the subscription agreement, it states that DSI ultimately only received $125,000 of plaintiff's investment.  Id., Response 8.

Section 10 of the Note specifies the conditions that constitute an Event of Default, which include a failure to pay interest or principal on the Note when due.  Section 11(b) of the Note sets forth the remedies available to the holder of the Note in the event of default, which include the holder's ability to declare amounts under the Note immediately due and payable and to increase the Note's interest rate from 8% to 15%.  On or about March 18, 2013, Adam Gottbetter, then serving as counsel for Rosenbaum, sent a letter to DataCom demanding immediate payment of the principal and interest due on the Note.  (Bailey Aff. Ex. 3)  The letter also states that "Pursuant to Section 11(b) of the Note, you are notified that the Note has been bearing interest at a rate of 15% per annum from the Maturity Date."  Id.

C.  Discussion

The facts material to Rosenbaum's claim are not in dispute.  Rosenbaum has come forward with evidence that DataCom breached the Note by failing to make payments of interest and principal when due in July 2007.  Rosenbaum has submitted copies of the subscription agreement and the Note; DataCom does not dispute their authenticity and submitted near- identical versions of the same documents as attachments to its own affidavit.  (Bailey Aff.

Ex. 1, 2)  Plaintiff has come forward with evidence of DataCom's failure to pay the Note, and DataCom has conceded that it is in default.  (Def. Response to Rule 56.1 Statement, Response 15)

Undisputed evidence reflecting the terms of an agreement, performance by the movant, and the non-movant's failure to make required payments is sufficient to establish breach of contract as a matter of law.  See, e.g., Yonkers Ave. Dodge, Inc. v. BZ Results, LLC, 945 N.Y.S.2d 280 (1st Dep't 2012).  Failure to make payments according to an agreed-upon schedule "is routinely held to constitute a material breach . . . ."  Awards.com, LLC v. Kinko's, Inc., 187, 834 N.Y.S.2d 147 (1st Dep't 2007).

DataCom endeavors to raise a genuine dispute of material fact by challenging whether DSI received "full consideration" for the issued Note; DataCom argues that DSI ultimately received $125,000 of the $200,000 deposited into the escrow account by Rosenbaum. Notably, DataCom does not dispute that Rosenbaum deposited $200,000 into the proper escrow account.  DataCom does not explain what it means by "full consideration," and cites no authority indicating the legal significance of this proposition.  To the extent that DataCom implies that the Note fails as a contractual obligation because it received only $125,000 in exchange for a promissory note with a face value of $200,000, "absent fraud or unconscionability, the adequacy of consideration is not a proper subject of judicial scrutiny."  Dafnos v. Haynes, 694 N.Y.S. 2d 42, 44 (1st Dep't 1999) (citing Apfel v. Prudential-Bache Secs. Inc., 81 N.Y.2d 470, 476 (1993); Restatement [Second] Contracts, § 79, comment c).  Under New York law, consideration sufficient to support contract formation "consists of either a benefit to the promisor or a detriment to the promisee."  Weiner v. McGraw–Hill, Inc., 57 N.Y.2d 458, 464 (1982).  "[T]he

parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value." Apfel, 81 N.Y.2d at 475.

Here, there are no allegations of fraud or unconscionability and DataCom concedes that it received a benefit under the Note—namely, $125,000 from Rosenbaum's investment. (Def. Response to Rule 56.1 Statement, Response 8)  DataCom does not contend that Rosenbaum had any responsibility beyond depositing the money in the designated escrow account, and the record indicates no such further obligation.  In the absence of a showing that Rosenbaum had any responsibility beyond depositing the $200,000 in escrow, defendant has failed to show that its failure to obtain the full $200,000 out of escrow provides a defense to Rosenbaum's claim.

Finally, because Rosenbaum has sought to recover interest on the Note at the post-event of default rate of 15% from the July 2007 date of default to the present day, DataCom argues that there remains a genuine issue of material fact as to whether Rosenbaum provided written notice of default to DataCom at any time prior to March 20, 2013.  However, Rosenbaum does not contend that any such prior notice was provided, and it is undisputed that notice was received by DataCom on or about March 20, 2013.  (Bailey Aff. ¶ 17; Ex. 3)  Because the parties are in agreement that the only notice provided by Rosenbaum was the March 20, 2013 letter, this point is not disputed.

The parties disagree as to the legal effect of the March 20 letter.  Rosenbaum asserts that by reason of giving notice on March 20, 2013, the amount due on the Note should be calculated as having accrued at the post-default interest rate of 15% from the original date of default, which was in July 2007.  DataCom disagrees and argues that the post-default rate only applies from the date on which notice of default was provided to DataCom.  The interpretation of

this contractual term turns on no disputed facts.  Neither party has submitted any parol evidence regarding the contract's formation or terms.

Section 10 of the Note, entitled "Events of Default," provides: "The occurrence of any of the following events shall constitute an event of default . . . : (a) [DSI] fails to pay any installment of interest hereunder when due and such default continues for a period of 10 days; [or] (b) [DSI] fails to make any payment of principal hereunder when due . . . ."  It is undisputed that an event of default occurred no later than July 2007, when DataCom failed to repay the principal by the maturity date of the Note.  The relevant portion of Section 11 of the Note, entitled "Remedies Upon Default," provides:

> Upon the occurrence of an Event of Default referred to in Section 10(a) or 10(b), Holder,  by notice given in writing to [DSI], may automatically increase the interest rate of this Note to 15% per annum for so long as the Event of Default remains uncured (if capable of cure), subject to any maximum rate permitted by law.

(Bailey Decl. Ex. 1 at 4-5)

The Note states that the holder may "automatically increase" the interest rate, by notice in writing.  The permissive "may"  indicates that affirmative action is required on the holder's part in order to increase the rate, and the preceding clause—"by notice in writing to [DSI]"—specifies the action necessary to effect such an increase.  The opening clause of the provision, "Upon the occurrence of an Event of Default . . ." is most naturally read as setting forth the condition upon which the note holder may, by notice in writing, effect a rate increase: once an event of default has occurred, the note holder may, but need not, increase the interest rate to 15% by providing written notice.

Rosenbaum argues that the March 20 letter merely notified DataCom that, "after the maturity date in July 2007, the Note has been bearing interest at a rate of 15% per annum,

- 13 -

pursuant to Section 11(b) of the Note." (Pl. Reply Br., Dkt. No. 22, at 15) But this interpretation effectively reads the words "by notice given in writing" out of the contract; it assumes that the rate increase occurs immediately upon default without any action on the holder's part, and treats the notice requirement as an after-the-fact formality rather than as a necessary requirement for the rate increase to go into effect in the first instance. Absent any express language providing for a retroactive rate increase, the Court declines to imply such a provision into the contract.

The most natural reading of the contract is that the post-default rate commences only upon due notice to the defaulting party. Thus, the post-default interest rate of 15% is effective from the date on which notice was provided through the date of judgment.


CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction (Dkt. No. 17) is DENIED, and plaintiff's motion for summary judgment (Dkt. No. 10) is GRANTED. Plaintiff shall submit a proposed judgment within 14 days of this Order.


SO ORDERED.

P. Kevin Castel
United States District Judge


Dated: New York, New York
       February 13, 2014